SARAH B. MAYO AND OTHERS,
vs.                                    July Term, 1847.
ISAAC MAYO AND OTHERS.

[CONSTRUCTION OF WILL—ELECTION.]

A party, by a declaration of trust, settled upon his son and daughter certain bank stock, which he declared he would hold in trust for them, the dividends to be paid to them equally, share and share alike, and on the death of the daughter, one-half to be transferred to her children, and on the death of the son, the whole to be transferred to his daughter and her children, and subsequently made his will, devising certain property, including this stock, in trust for his son, and expressed a desire in the will that the son should elect to take thereunder. He also gave to his wife certain property for life, confiding to her the care and maintenance of his son, and after her death, he gave his son in addition, a life annuity of $600. The son elected to take under the will. HELD—

1st, That by this election, the declaration of trust, so far as the son is concerned, is to be treated as a nullity, and the trust under the will extends to, and comprehends, the dividends upon the stock, which became due after the date of the will, as well as those which were declared previously.

2d, That the trusts created by the will in favor of the son take effect immediately upon the death of the testator, and are not suspended until the death of the widow of the testator.

3d, The will not having disposed of the portion of the stock given to the daughter and her children, and there being no expression in the will of the testator's wish that they should take thereunder, they are not required to elect to hold the stock under the will, or the declaration of trust.

A will operates upon whatever *personal* estate the testator dies possessed of, whether acquired before or after the execution of the instrument.

A testator confided to his wife, to whom he had given a large portion of his estate, the care and maintenance of his son, and after her death he charges upon his estate an annuity of $600 per annum, and provides that this annuity, with all the other property given to his son by his will, should be held in trust by his executor "for the use and benefit of his son during his natural life," and declared "his intention" to be to assure to him "an ample and *independent* support," so far as the law will allow. HELD—

That the income of the trust estate was to be paid over to the son during the life of the testator's widow, and not to accumulate during that time, and form part of the principal ; it was not the testator's intention to give his son, during the life of his wife, a mere indefinite claim upon her for care and maintenance.

---

[The following are the substantial facts in this case. The late Chancellor Bland, by a declaration of trust, (the terms of which are sufficiently stated in the first of the following opinions in this case,) dated the 20th of December, 1843, settled upon his son William G. Bland, and his daughter, Mrs. Mayo, certain shares of bank stock, formerly belonging to Sophia Bland, his sister, and to which he was entitled, as administrator and distributee, and afterwards, to wit, on the 2d of May, 1845, executed his will, the material provisions of which, so far as they relate to this case, are the following :

"I, Theodorick Bland, after much consideration of the peculiar circumstances of my family, do make this my last will for the disposition of all my property after my death."

"I do hereby give and devise all my property, real and personal, of every description, except Blandair, and the slaves, with their increase, which I derived in a course of distribution

from my uncle, Thomas Fitzhugh, deceased, and the other personal property thereon, not slaves, and used with the same at the time of my death, and except the bequests hereinafter mentioned, unto my wife, during her natural life, confiding to her the care and maintenance of our son, should he so long live."

He then devises the property excepted in the previous clause to his daughter for life, "and after her death, as hereinafter provided, she, and those taking after or under her, paying therefor to her mother, during her natural life, annually to be computed from the day of my death, the sum of $300 by way of a rent charge." The will then proceeds thus:

"As it is my belief that my son will never be in a situation to maintain a wife and family as he himself would wish, so I do most earnestly hope and trust he may never marry, and, therefore, intending that he shall and will, for his own security, elect to take that which I do hereby give him, together with land, stocks, and all other property which he now holds, all of which I have, in one way or other, heretofore given him, under this my last will, and which I do hereby give and devise to him, and in addition thereto, an annuity of $600 per annum, to be paid to him half yearly from the day of his mother's death, when his claim to a maintenance out of the devise to her, as before mentioned, will cease, or in case my wife should die before me, then the said annuity to my son to commence and be paid half yearly from the day of my death. The said annuity, together with all other claims and property, so as aforesaid, heretofore or hereby given to my son, to be held in trust by my executor, Captain Isaac Mayo, for the use and benefit of my son during his natural life, and no longer, and to secure the regular and punctual payment of the said annuity unto my son during his natural life, by my daughter, or the person or persons claiming after or under her in respect of the property which she or such person or persons may take under this my will, I do hereby charge and bind all my estate, real and personal, including the before mentioned Blandair estate and property, without exception, whoever may be the holder of the same, or any part thereof, with and for the payment of the said annuity to my son."

"But my son, should he feel himself competent and so disposed, may, by his last will, made according to law, give all or any portion of the property he may, so as aforesaid take under this my last will, unto my daughter, his sister, or to any one or more of her children or descendants, in such manner and upon such terms as he may think proper, and if my son should make no such last will, then all the land and property heretofore given to him as aforesaid, to descend and pass as a part of the residue of my estate as hereinafter directed."

"My intention by the aforegoing restrictive provisions on my son, being as effectually as the law will allow, to assure to him an ample independent support during his natural life, so that it may not be lost by any imprudence of his own, or by any misconduct of others, and at the same time to leave him something to bestow upon the nearest, most natural and best objects of his affections, by whom, I trust, he may be always treated most respectfully and kindly."

He then bequeaths certain books to his son-in-law, Captain Isaac Mayo, and expresses a wish that "the copy of his reports of cases in chancery in his use at the time of his death, and in which I have made many additional references in pencil," should be presented and given to one of his grand-children by their parents.    All the rest of his books, with his household furniture, to be preserved by his wife for her own use during her life, or to be sold, or to be given to his children or grand-children in such manner and proportions as she may think proper.    "All my manuscripts concerning law or any other subject to be burnt as being of no value, and utterly unfit for publication."

He then makes disposition of certain real estate in Virginia, directing it to be sold, and the proceeds applied in payment of his debts in exoneration of his real and personal estate in this state; the residue to be invested and held by his wife during her life, and "to be bound as aforesaid for the payment of the said annuity to my son, and then to go with and as a part of the residue of my estate, as hereinafter directed."

He then gives and devises "all the rest and residue of his property, real and personal, of every description, not herein otherwise or fully disposed of after the death of my wife, unto

my daughter during her natural life, and after her death, to her child or children, or their descendants, if any, equally, in fee simple, subject, however, to the life estate and powers hereinafter given."

He then gives to his daughter the power, if married, by any writing in the nature of a last will, made altogether in her own hand-writing, or attested as the law requires in cases of wills, or if sole, by her last will made according to law, to give and devise the said residue of his estate to any one or more of her children or descendants, upon such terms, and in such proportions as she may think proper, with further power by her will, or any instrument in writing in the nature of a will as aforesaid, to provide for the contingency of her own death without a child or children, or descendants of such then living, and of the death of the testator's son without a child or children, or the descendants of such living at the time of her death, by giving and devising the said residue of his estate in that event unto such person or persons as she may think proper.

He then provides that in case his daughter should die, leaving her present husband, Captain Isaac Mayo, surviving her, he shall have and enjoy the said residue of his estate during his life, and in case his daughter shall have made no such direction and appointment as aforesaid, then he may by his last will give and devise to the children and descendants of his daughter, the said residue, to them or any one or more of them, in such manner and proportions as he may think proper.

He then provides, in case neither his daughter or her husband should make any such disposition as aforesaid, then said residue shall descend and pass from his daughter, according to law, as if she had been the legal owner thereof in fee simple, and absolutely by purchase, and had died intestate.

He then appointed his wife, Sarah Bland, and his son-in-law, Captain Isaac Mayo, the executrix and executor of his will.

The testator died on the 16th of November, 1846, and his widow having renounced the executorship, letters testamentary were granted to the executor, Captain Isaac Mayo, named in the will.

The other proceedings in this case are fully stated below, and in the following opinions of the Chancellor.]

THE CHANCELLOR:

By a paper executed on the 20th of December, 1843, the late Chancellor Bland settled on his daughter, Mrs. Mayo, and his son, William G. Bland, certain shares of bank stock which, by the said paper, he declared he would hold in trust for them, the dividends, as they accrued, to be paid over to them equally, share and share alike.   On the death of the daughter, one-half of the said stock to be transferred to her children, &c., and on the death of the son, the whole of the said stock to be transferred to his daughter, should she be then alive, if not, then the whole or the residue thereof to be transferred to her children, &c.

The declaration of trust appears to have been duly executed by the party making it, from its date until his death, which occurred in November last.   But on the 2d of May, 1845, the late Chancellor made and executed a last will and testament in proper form, by which he gave to his said son certain beneficial interests, including this stock, and expressed in the instrument a desire that he should elect to take thereunder, and in the same will there are devises and bequests to the testator's daughter, Mrs. Mayo, upon whom, by the said declaration of trust, the other portion of the bank stock had been settled as therein provided.

To the widow of the testator, the whole of his property, real and personal, was given, with the exceptions mentioned, during her natural life, confiding to her the care and maintenance of his son, should he so long live.   In the event of the death of the widow, living the son, and from the period of her death, the will gives the son, in addition to the other devises and bequests in his favor, a life annuity of $600, the said annuity, with all other claims and property, so as aforesaid or thereby given to the son to be held in trust by the executor of the will, Captain Isaac Mayo, for the use and benefit of his son during his natural life, and no longer.

There was also a provision that the son might, should he feel himself competent and so disposed, by his will, give all the property which he might take under the will of his father to his sister, Mrs. Mayo, or to any one or more of her children or their descendants. The testator also declared in the restrictive provisions of his will in regard to his son, his intention was as effectually, as the law would allow, to assure to him an ample independent support during his natural life, so that it may not be lost by his imprudence, or the misconduct of others, giving him at the same time something to bestow upon the nearest and most natural objects of his affection.

There being no provision in the will, or in any other instrument of writing, for the appointment of a successor to execute the trust created by the paper of December, 1843, a bill was filed in this court on the 21st of January last by the testator's daughter, Mrs. Mayo, and her infant children, suing by their next friend, against Isaac Mayo, the husband and executor of the will, (the widow of the testator jointly appointed with him having renounced,) William G. Bland, and the banks, praying for the appointment of a new trustee, that the executor may account for the dividends which may have been received, and remain unpaid and for general relief.

William G. Bland, by his answer, elected to take under the will, and insisted that the other parties interested should be put to their election also, the court making an election for the infants. It was also stated in the answer, and is conceded, that certain of the dividends which had been declared on the bank stocks, had not been paid to the said William G. Bland, and that a portion thereof so remaining unpaid were declared and became due after the date of the will. With respect to these dividends, the answer of William G. Bland submitted whether they were to be held in trust for or paid over to him, but in either event he claimed interest upon them from the periods when they respectively became due, except as to the two first dividends in the Bank of Baltimore, as to which he stated he had agreed with the deceased in his lifetime to waive all claim for interest before the 1st of November, 1845.

9*

Answers were filed by the banks and Captain Mayo, but they do not appear to be material to the questions submitted for decision, and which have been argued, in writing, by the counsel for the parties. The first of these questions relates to the supposed obligation of Mrs. Mayo and her children, to elect to hold the bank stock under the will, or declaration of trust.

Upon a deliberate and careful reading of the will, I am unable to find any provision which requires such election to be made. The will does not profess to dispose of that portion of the bank shares which, by the declaration of trust, is given to the daughter and her children, nor is there any expression of a wish on the part of the testator, that she or they shall elect to take under his will as there is with regard to the son. The presumption is very strong, not to say irresistible, that if it had been the design of the testator to put her to such election, he would have said so, when it is plain this very subject of election was present in his mind, and he was expressing an earnest wish that his son should elect to hold under the will. In the absence of any such declared wish with reference to the daughter, and there being nothing in the will from which it can be inferred that the testator intended to deal with this stock, or that portion of it which he had given to her and her children as subject to his will, I am of opinion that she and they are not required to elect.

2d. Looking to the entire will, and every clause thereof, as it is proper to do for the intention of the testator, I am of opinion, also, that the father designed that all the property which his son took under it should be held in trust for his use, and that the trust extends to and comprehends the dividends upon the bank stock, which became due after the date of the will as well as those which were declared previously.

By electing to take under the will and not under the declaration of trust, the latter instrument, so far as the son is concerned, is to be treated as a nullity. Every beneficial interest under it which William G. Bland might have otherwise claimed, not only with regard to the principal, but its fruits, is waived, and in lieu thereof he elects to take that which is given him by

the will. The testator evidently intended to dispose of this stock. He speaks of stocks which he had given his son, and expresses his will that they and all other property and claims shall be held in trust by Captain Mayo for the use of his son. He treats this bank stock as subject to his will, and the dividends upon it then due or thereafter to become due, must pass with it. Though the will is different with regard to real estate, it is well settled that a will operates upon whatever personal estate the testator dies possessed of, whether acquired before or after the execution of the instrument. 1 *Williams on Execrs.*, 6 ; 4 *McCord*, 39 ; and as the testator deals with this stock as his own, and the son, by his election, has consented that he will take it under the will, the dividends, though they may have accrued after the date of the instrument, must be considered as passing under it.

In the provisions of this will, so far as the son is concerned, there is a marked anxiety to provide for him a comfortable support during his life, to guard him against imposition, and a willingness to gratify him in any natural desire he may feel to select among those persons who stand towards him in the nearest and dearest relation, the individual or individuals upon whom he may bestow in the way pointed out, the bounty acquired by him under his father's will. This purpose, it seems to me, would be clearly frustrated by a construction which would place one portion of the property in trust, and leave another subject to a different disposition.

3d. The third question submitted is, whether the trust created by the will takes effect prior to the death of the widow of the testator, the tenant for life, or in other words, whether the election of William G. Bland to take under the will of his father operates immediately, or shall be suspended until the death of his mother ?

My impression is, that it cannot be so suspended, and that all the arrangements of the will would be disturbed by a contrary decision. It is admitted by the solicitors on both sides, that an account must be taken, and an order to that effect will be passed, and Captain Isaac Mayo will be appointed trustee to

supply the want of a trustee under the declaration of trust of December, 1843. He will be required to give bond as such, and also as trustee for William G. Bland under the will.

The solicitor for the complainant will prepare an order in conformity with the views thus expressed.

———

[An order was then passed, dated the 1st of September, 1847, first: ratifying the election of William G. Bland to take under the will of his father, said election to take effect from the death of the testator, upon all the real, personal, and mixed estate which the said William then held or possessed, including one-half of the bank stock conveyed by the declaration of trust set forth in the proceedings, and the rents, dividends and profits thereof, all of which he is hereby required to account for, and so far as are in his possession, deliver over to Isaac Mayo, the trustee therefor, as hereinafter set forth. Second: appointing said Mayo trustee in the place of the testator, to have and to hold the other half of the aforesaid bank stocks under the declaration of trust above mentioned, for the use and benefit of his wife and her children, according to the said declaration of trust, and requiring him to give two bonds, one for the faithful performance of his duties as trustee of the estate of William G. Bland, the other as trustee of the estate of his wife and her children, and also to file schedules of the property, with the appraised value thereof, which shall come into his hands as trustee for said estates. Third: directing the banks to have the stock standing on their books in the name of Sophia Bland transferred to said Mayo, the one-half to be held by him in trust for his wife and her children, under said declaration of trust, and the other half to be held by him as trustee of the estate of William G. Bland, under the will of said testator. Fourth: directing said Mayo to pay the costs of these proceedings, one-half out of the trust estate of said William G. Bland, the other out of that of his wife and her children. Fifth: referring the cause to the Auditor to state such accounts as may be required, and authorizing the parties to take testimony upon giving the usual notice, and sixth: ordering said Mayo to de-

posit with the proper officer of any corporation or body politic, or person, with or in whose possession any portion of the trust estate of William G. Bland may be, an authority, empowering him, the said William, to receive the rents, issues, dividends, interest, and profits thereof, the said authority to be subject to the future order and direction of this court, and with liberty to the said trustee and, *cestui que trust*, to apply for such future directions as may from time to time appear to be necessary.

Afterwards, on the 30th of August, 1849, the trustee Mayo, filed his petition in which, after stating his appointment under the order of the 1st of September, 1847, he alleges that the rents, issues, dividends, interest and profits of the trust estate of the said William G. Bland, amount to about $300 per annum, which the said William has hitherto received, and so far as petitioner can judge, misapplied the same, or a part thereof; that under the will of the said testator, the said William is entitled to care and maintenance from the widow of the testator, to whom he devised and bequeathed certain parts of his estate, subject to the care and maintenance of said William, and, that, therefore, none of the said profits, rents, issues, &c. are required for his support, and if any may be required he has not the suitable judgment and skill in making the proper application thereof; that there might be, and should be, by proper management, the whole or a greater part of said rents, issues, &c., applied to the enlargement of the said trust estate, according to the declaration of trust and last will of the testator. The petition, therefore, prays the court to rescind so much of the said order of the 1st of September, 1847, as requires the petitioner to allow the said William, personally, to receive the said rents, issues, &c., and that the same may be received by petitioner, as trustee as aforesaid, and applied by him as duty requires, and for general relief.

At the same time the trustee made a report, in which he states, that said William has refused to deliver up to him the trust property, though frequently requested so to do; that since his former report, he has been compelled, from a well founded apprehension, that negro man Phil, belonging to said trust es-

tate, would escape out of the state, to sell him; that he has received for him the sum of $600, which he holds subject to the court's order, and for which, until invested, he will allow interest.

This petition was set down for hearing by an order of the Chancellor, by a day fixed, provided a copy thereof be served upon the said William G. Bland, and Sarah Bland, the widow of the testator, on or before a certain day. The latter filed her answer thereto, in which she admits that said William is entitled to care and maintenance from her, which she avers she has faithfully given to him at great cost and sacrifice, but she also says there is no man in the state better qualified to take care of his money than the said William, and that she does not believe he ever wasted a cent in his life.

It was admitted that Mrs. Bland, the widow, has elected to take under the will, by suffering the time to elapse without renouncing, as required by law.

William G. Bland, by his answer, denies that he is incapable of taking care of his income, or that said Mayo has any right to inquire into the mode in which he may dispose of the same. He admits his right to care and maintenance from his mother, and that he has received it. He further states, that at the time he made his election, he was informed by his solicitor that he would have the control of his income to do with it as he pleased, and but for that belief, in which all parties acquiesced, he never would have made the election, and the said Mayo also informed him such was the case. He further states, that the net income of his estate which he owned at his father's death, and so elected to take under his will is only about $280 per annum, and for the true construction of said will he refers thereto, by which it will appear that the novel and strange pretension of the said Mayo is entirely unsupported, and is against its whole tenor and purpose.

Afterwards the said William G. Bland filed his petition, in which, after stating that it appears from the report of said Mayo, that he has sold negro Phil, belonging to petitioner, for $600, upon the alleged ground that he was about to escape from the state, he avers that he knows nothing of any such intention except from the statement of said Mayo, and submits that

the latter ought to be put upon proof of the same; that he had no notice of said Mayo's proceedings, and that he had no right to sell the slave without such notice and an order of court; that said slave hired at the rate of $60 per annum, and was worth about $80 a year, and that if the court should sanction this unauthorized and oppressive proceeding, he is entitled to have the proceeds so invested as to preserve for him an equal amount to the value of the hire aforesaid.

The trustee, Mayo, in his answer to this petition, states the grounds of his apprehension in regard to intention of the negro to escape, and that what he did in the premises was done as a matter of duty, and after consultation with his solicitor.

In support of the petition of the trustee, the deposition of J. N. Watkins was taken, who stated that about twelve years since, at the request of Chancellor Bland, he took the said William to the insane hospital near Baltimore; that he was then in such a state of derangement as to render the use of a straight-jacket necessary; that afterwards he returned to the Chancellor's and lived in his house many years, until the latter's death; that since his return from the hospital, deponent has had no opportunity of knowing the condition of his mind. Also the deposition of said Mayo, in which he detailed conversations which he had with the said William in reference to the mode of disposing of his income, and that from these, and all the information he has been able to obtain on the subject, deponent believes the same is not properly applied, but on the contrary wasted and misapplied by the said William.

Upon the hearing of these petitions, the Chancellor delivered the following opinion.]

The Chancellor:

The question which arises upon the petition of Captain Isaac Mayo, depends upon the true construction of that part of the will of the late Chancellor Bland, in which provision is made for his son William G. Bland.

The petition alleges, that by proper management, the whole or a greater part of the income and profits of the trust estate

given by the testator to his son might be applied to its enlargement and that the same is now misapplied.

By the construction contended for, the interest of the trust estate, stated to be about three hundred dollars a year, must be accumulated and added to the principal, and either pass with the principal under the restricted testamentary power given by the will to the son of the testator, or descend and pass as part of the residue of the estate, as by the said will is provided. But, in my opinion, this is not the proper construction of the will: It is true, the testator confides to his wife, to whom he gave, during her life, a large portion of his estate, the care and maintenance of his son, and that upon her death, he charged upon his estate an annuity of six hundred dollars to be paid his son, half yearly, from the day of his mother's death, when his claim to a maintenance out of the devise to her would cease. But the will expressly provides that the said annuity, together with all other claims and property so as aforesaid, heretofore, or hereby, given to his son, should be held in trust by his executor, Captain Isaac Mayo, for the use and benefit of his son during his natural life, and no longer.

The claims and property, therefore, by the will gives to the son of the testator, the whole of which the will declares the testator had given him, in one way or other, during his life, was to be held by his executor in trust for the "use and benefit" of his son during his natural life, and yet it is maintained by the executor and trustee, that these words "use and benefit" mean no more than that the income and profits of the trust property shall accumulate, and with the principal, be subject to the limited power of devise given to the *cestui' que use* by the will of the father. The position is, that the mother is, by the will, bound to take care of and maintain the son, and that, therefore, the profits of the estate given him by his father are not to be placed in his hands, or to be used or spent by him in any way. If this be so, if the son is to have no income of his own, but must during the lifetime of the mother look exclusively to her for all his supplies, how can it be said that he will enjoy that "ample and *independent* support" which his father said it was his intention to assure to him?

I cannot, looking to the entire frame and texture of this will, bring myself to think that the testator intended during the life of his wife, to give to his son a mere indefinite claim upon her for care and maintenance. Certain it is, that after the death of his wife, he did not design to confine his son to this indefinite kind of provision, for the will expressly directs, that upon her death, the annuity of six hundred dollars shall commence to be paid to him, half yearly, from the day of her death. And it may well be remarked, if the testator thought his son capable of receiving and properly applying this annuity, there can be no good reason for supposing that he considered him incapable of making a proper use of the income of the trust estate. The will, it may be observed, does not say one word about accumulations of the trust estate. The language is, that "his son, should he feel himself competent and so disposed, may, by his last will, made according to law, give all or any portion of the property which he may so as aforesaid take under this my last will unto my daughter, his sister," &c. If he had intended that the property so given his son with its accumulations should be so disposed of by the latter, is it not presumable he would have said so in terms?

My opinion is, that the testator intended to trust his son with the receipt and use of the income of his estate, and that he was not to be dependent entirely on his mother for the means of gratifying his wants and his wishes. His father says, "he intends to assure his son an ample and independent support as effectually as the law will allow," and I am at a loss to see how this intention, so emphatically expressed, can be gratified, if for every dollar he may require for any purpose he must apply to others.

The answer of William G. Bland, to the petition of the trustee, denies that he is incapable of taking care of his income, and I can find no evidence in these proceedings to outweigh this denial. There is nothing certainly to show that the mental condition of the son has become worse since his father's death, and as has been already remarked, his father unquestionably thought him capable of taking care of his annuity, for he ex-

pressly directs it to be paid to him. The petition, therefore, for these reasons, must be dismissed with costs.

The remaining question arises upon the petition of William G. Bland, filed on the 4th of October last, and the answer thereto of Isaac Mayo.

Upon carefully considering all the circumstances attending the sale of the negro Phil, I am of opinion, that the trustee, had reasonable grounds for apprehending he might run away, and that in selling him he has done nothing which should subject him to the censure of the court, and that in view of the insecure and perishable nature of such property, the *cestui que trust* will be adequately indemnified by receiving the interest upon the purchase money. It is true, the parties interested in remainder after the life estate of the *cestui que trust* are benefited by the sale, because by it, they are protected from the contingency of the death of the slave before the life estate may be determined. But this advantage to them is not secured by any corresponding sacrifice of the rights of the first taker, if the interest on the purchase money upon a fair computation may be considered a reasonable equivalent for the services of the negro if he had not been sold. He was hiring at the time of the sale for sixty dollars per annum, but after deducting the expenses of. clothing him, estimated at twenty dollars, the net income very little exceeded the interest on the sum for which he sold, without making any allowance for medical attendance and other contingencies proper to be considered. In view of these and of the chance of the death of the slave, during the continuance of the life of William G. Bland, and the numberless casualties to which such property is exposed, I am clearly of opinion, that the legal interest on the sum for which he sold, secured absolutely during the life of Mr. Bland, is a full indemnity to him. The money must, however, be invested under the order of the court, and made subject to the order of the 1st of September, 1847. The counsel may prepare an order in accordance with these views.

RANDALL, for the Trustee.
McLEAN, for the Defendant.

[From the order dismissing the petition of the trustee, Mayo, the latter appealed to the Court of Appeals. In that court the cause was argued before *Le Grand*, C. J., *Eccleston* and *Mason*, J., by *Randall & Hagner*, for the appellant, and by *McLean*, for the appellee. The following is the opinion of that court, delivered by his honor *Chief Justice LeGrand*.]

"We entirely concur with the Chancellor, both in his reasoning and the order which he passed in this case. It was manifestly the intention of the father of the appellee to provide him "an ample and *independent* support during his natural life," and there is not the slightest evidence furnished by the record to justify the action of the Court of Chancery as asked for by the appellant. There is nothing to sustain the allegation that the appellee has squandered, or is likely to misapply, his income, nor is there any proof to show his mental condition to be different from what it was when his father, by his will, so carefully assured to him "an ample and independent support." We regard the petition as wholly unsustained. *Order affirmed.*"